McGREGOR W. SCOTT
United States Attorney
KIRK E. SHERRIFF
Asst. United States Attorney
Federal Building, Rm. 3654
1130 "O" Street
Fresno, CA 93721
Telephone: (559) 498-7272

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:05-CV-00900 OWW DLB |
| | ) | |
| Plaintiff, | ) | CONSENT DECREE OF PERMANENT |
| | ) | INJUNCTION |
| v. | ) | |
| | ) | |
| CARL M. SOUSA and WHITE RIVER | ) | |
| DAIRY, a California company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

     Plaintiff, the United States of America, by its undersigned

attorneys, having filed a Complaint for Injunction against

Defendants Carl M. Sousa and White River Dairy, a California

company, and Defendants having appeared and consented to the

entry of this Consent Decree of Permanent Injunction (the

"Decree"), without contest and before any testimony has been

taken, and the United States of America having consented to this

Decree;

     IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

     I.  This Court has jurisdiction over the subject matter and

over all parties to this action.

     II.  The Complaint for Injunction states a cause of action

1  against Defendants under the Federal Food, Drug, and Cosmetic

2  Act, 21 U.S.C. §§ 301 et seq. (the "Act").

3      III.  Defendants and each and all of their agents,

4  representatives, employees, attorneys, successors, assigns, and

5  any and all persons in active concert or participation with any

6  of them who have received notice of this Decree, are hereby

7  permanently restrained and enjoined, under the provisions of 21

8  U.S.C. § 332(a), and the inherent equity authority of this Court,

9  from directly or indirectly introducing or causing to be

10  introduced into interstate commerce, and delivering or causing to

11  be delivered for introduction into interstate commerce, any

12  article of food within the meaning of 21 U.S.C. § 321(f), and

13  administering to animals any new animal drug, within the meaning

14  of 21 U.S.C. § 321(v), while such drug is held for sale after

15  shipment in interstate commerce, unless and until:

16      A.  Defendants have established and implemented a system

17           ensuring that each of the animals that they acquire,

18           purchase, hold, transport, sell, or consign is

19           individually and permanently identified, by tag number;

20      B.  Defendants have established and implemented a written

21           record-keeping system that prevents them from selling,

22           consigning, or distributing any animals with illegal

23           new animal drug residues.  This system shall include,

24           but not necessarily be limited to, the keeping of

25           written records on every animal to which Defendants

26           administer drugs.  These records shall include, at

27           minimum: (1) the identity of each animal that

28           Defendants medicate; (2) the date of each

2

1   administration of medication to each animal; (3) the
2   identity of each drug used; (4) the dosage of each drug
3   used; (5) the route of administration of each drug
4   used; (6) the lawful written order of a licensed
5   veterinarian within the context of a veterinarian-
6   client-patient relationship for each drug used; (7) the
7   name of the person administering each drug; (8) the
8   proper withdrawal period for each drug used; (9) the
9   date such withdrawal period will terminate for each
10   drug used; (10) the date each medicated animal is
11   shipped for slaughter or leaves Defendants' control;
12   and (11) the name and address of the purchaser,
13   receiver, or consignee of each medicated animal that is
14   shipped for slaughter or leaves Defendants' control;
15   C.   Defendants have established and implemented a system
16   ensuring that their use of new animal drugs conforms to
17   the use approved by the United States Food and Drug
18   Administration ("FDA") as contained in the drug's
19   approved labeling or to the lawful written orders of a
20   licensed veterinarian, so long as those orders do not
21   result in illegal residues.  This system shall include,
22   but not be limited to, measures to ensure that the
23   following will not occur: (1) administration of drugs
24   in excess of the approved dosage, unless such
25   administration is in accordance with the lawful written
26   orders of a licensed veterinarian within the context of
27   a valid veterinarian-client-patient relationship and is
28   in compliance with 21 C.F.R. Part 530; (2) sale for

3

1      slaughter of medicated animals before the expiration of

2      the relevant withdrawal period; and (3) use in

3      Defendants' animals of drugs not approved for use in

4      that species or not approved for the disease or other

5      condition for which the animal is being treated, unless

6      such use is in accordance with the lawful written

7      orders of a licensed veterinarian within the context of

8      a valid veterinarian-client-patient relationship and is

9      in compliance with 21 C.F.R. Part 530;

10   D.    Defendants have established and implemented a drug

11      inventory and accountability system that prevents them

12      from selling, consigning, or delivering any animals

13      with illegal new animal drug residues.  This system

14      shall include a written record for each drug that

15      Defendants purchase or receive for use in medicating

16      any of their animals, which record shall include, but

17      not be limited to: (1) the name of the drug; (2) the

18      date of purchase or receipt of the drug; (3) the

19      quantity, strength, and form of the drug purchased or

20      received; (4) the name and address of the supplier or

21      seller of the drug; (5) the date each drug is

22      administered; and (6) the amount and method of each

23      administration.  In addition, the inventory and

24      accountability system shall include periodic checks of

25      inventory and records to ensure that records accurately

26      document the drugs currently on hand and the

27      disposition of all drugs purchased or received,

28      including whether the drugs have been administered;

4

E.   Defendants have established and implemented a
     quarantine or segregation system that ensures ready
     distinction between medicated and unmedicated animals
     and that prevents Defendants from selling, consigning,
     or delivering for slaughter for use as food any animals
     with above tolerance new animal drug residues;

F.   Defendants have established and implemented a system
     that ensures that each animal that has been medicated
     is not directly or indirectly sold, consigned, or
     delivered for immediate or ultimate slaughter until the
     withdrawal period (specified either in the approved
     labeling or the lawful written orders of a licensed
     veterinarian, for each drug used on such animal) has
     expired.  This system shall also ensure that each
     purchaser, receiver, or consignee receives, prior to
     accepting any animal, a written statement from
     Defendants certifying that any animal that has been
     medicated has also been withdrawn for the appropriate
     time period or that the animal has not been medicated.
     This written statement must also include the date(s) on
     which the animal was medicated, each drug with which
     the animal was treated, the required withdrawal period
     for each drug, and the date(s) on which the withdrawal
     period(s) expired.  Defendants shall, prior to selling
     any animal, obtain the signature of the purchaser,
     receiver, or consignee documenting receipt of the
     statement from Defendants.  Defendants shall keep, as
     part of their records, a copy of the signed written

5

1    statement described in this paragraph;

2  G.    Defendants have established and implemented a system

3        that identifies the source of each animal that they

4        purchase or transport and documents whether such animal

5        has been medicated, the date of such medication, the

6        drug used, and the withdrawal period for such drug;

7  H.    Defendants have reported to FDA in writing the steps

8        they have taken to comply with paragraphs III(A)-(G);

9  I.    Within twenty (20) calendar days after receiving the

10        written report required in paragraph III(H), or as soon

11        as reasonably practicable, FDA representatives shall

12        inspect Defendants' operations, including all records

13        relating to the medication, purchase, sale,

14        consignment, and distribution of food-producing

15        animals; and

16  J.    FDA has notified Defendants, in writing, that they

17        appear to be in compliance with the requirements of

18        paragraphs III(A)-(H) of this Decree.  FDA shall notify

19        Defendants regarding its compliance status within

20        thirty (30) calendar days after completion of its

21        inspection identified in paragraph III(I) of this

22        Decree, or as soon thereafter as is reasonably

23        practicable.

24    IV.  Prior to obtaining written notification of compliance

25  from FDA as specified in paragraph III(J) above, Defendants may

26  administer medications as prescribed to an ill food-producing

27  animal that they own, but only after the animal has been examined

28  by a licensed, professional veterinarian and that veterinarian

6

1   has diagnosed and prescribed the particular medication for that

2   animal.  Defendants shall submit copies of the veterinarian's

3   diagnosis, prescription, and receipts for treatment or the

4   equivalent to FDA within ten (10) calendar days after treatment.

5       V.   Defendants shall maintain all records described in

6   paragraph III for each animal for a period of at least two (2)

7   years after the date the animal is sold, consigned, or delivered

8   for slaughter.  These records shall be made available immediately

9   to FDA upon request for purposes of inspection and copying.

10      VI.  Within twenty (20) calendar days after the entry of

11  this Decree, Defendants shall:  (a) provide a copy of the Decree,

12  by personal service or by certified mail, return receipt

13  requested, to each and all of Defendants' agents,

14  representatives, employees, attorneys, successors, assigns, and

15  any and all persons in active concert or participation with any

16  of them, and all persons to whom Defendants have sold, consigned,

17  or delivered any cattle or calves for slaughter within one year

18  preceding the date of entry of the Decree; and (b) explain the

19  terms of the Decree to each employee.

20      VII. Within twenty (20) calendar days after the entry of

21  this Decree, Defendants shall provide the Director, FDA San

22  Francisco District Office, at the address set forth in paragraph

23  XVI, and to Plaintiff's attorneys, an affidavit from a person

24  with personal knowledge of the fact stated therein, stating the

25  fact and manner of Defendants' compliance with paragraph VI and

26  identifying the names and positions of all persons who were

27  notified pursuant to paragraph VI.

28      VIII. After entry of the Decree, Defendants shall, within

7

1  fifteen (15) calendar days of employment of any new employee at

2  Defendants' dairy operation: (a) provide a copy of the Decree, by

3  personal service or by certified mail, return receipt requested,

4  to all such employees; and (b) explain the terms of the Decree to

5  all such employees.

6      IX.  After Defendants receive written notification from FDA

7  as specified in paragraph III(J) above, Defendants and each and

8  all of their agents, representatives, employees, attorneys,

9  successors, assigns, and any and all persons in active concert or

10 participation with any of them, are permanently restrained and

11 enjoined from directly or indirectly doing or causing to be done

12 any of the following acts:

13     A.   Introducing and delivering for introduction into

14          interstate commerce any article of food, within the

15          meaning of 21 U.S.C. § 321(f), that is adulterated

16          within the meaning of 21 U.S.C. §§ 342(a)(2)(C)(ii) or

17          342(a)(4);

18     B.   Administering to any food producing animal any article

19          of drug, within the meaning of 21 U.S.C. § 321(g),

20          unless such administration is in a manner that strictly

21          conforms to such drug's labeled indications and

22          conditions for use or is by or on the lawful written

23          order of a licensed veterinarian within the context of

24          a valid veterinarian-client-patient relationship and is

25          in compliance with 21 C.F.R. Part 530;

26     C.   Doing any act with respect to any article of drug,

27          within the meaning of 21 U.S.C. § 321(g), or new animal

28          drug within the meaning of 21 U.S.C. § 321(v), if such

8

act is done while such drug is held for sale after shipment in interstate commerce and results in such drug being adulterated within the meaning of 21 U.S.C. § 351(a)(5); and

D.   Failing to implement and continuously maintain the requirements of this Decree.

X.   Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' dairy operations, including any new locations, and any facility or location at which Defendants hold or store drugs used to treat animals, including food producing animals, and to take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree.  Such inspections may, at FDA's discretion, include the taking of photographs and samples and the examination and copying of all records that relate to the drug treatment and the holding, delivery, sale, consignment, or distribution of animals on the premises.  Such inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials.  Such inspection authority granted by this Decree is apart from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

XI.   Defendants shall promptly provide any information or records to FDA regarding the sale, consignment, delivery, or medication of any animals upon request.

XII. Defendants shall reimburse FDA for the costs of conducting and evaluating all inspectional, laboratory and analytical, and other work that FDA deems necessary to evaluate

9

1   Defendants' compliance with any part of this Decree at the

2   standard rates prevailing at the time the activities are

3   accomplished.  As of the date of entry of this Decree, these

4   rates are: $73.55 per hour and fraction thereof per

5   representative for inspection and supervision work other than

6   laboratory and analytical work; $88.15 per hour and fraction

7   thereof per representative for laboratory and analytical work;

8   38.5 cents per mile for travel expenses; and reasonable

9   subsistence expenses where necessary.  In the event that the

10  standard rates generally applicable to the FDA supervision of

11  court-ordered compliance are modified, these rates shall be

12  increased or decreased without further order of the Court.

13      XIII. If any Defendant violates this Decree and is found in

14  civil or criminal contempt thereof, that Defendant shall, in

15  addition to other remedies, reimburse the Plaintiff for its

16  attorneys' fees (including overhead), investigational expenses,

17  expert witness fees, and court costs relating to such contempt

18  proceedings.

19      XIV. If, based on the results of any inspection or analysis

20  conducted after the inspection described in paragraph III(I), or

21  any other information, FDA finds that any Defendant is not in

22  compliance with the Act or the requirements of this Decree, FDA

23  may notify Defendants in writing of the non-compliance and may

24  require that Defendants immediately cease selling or delivering,

25  or causing to be sold or delivered, animals for slaughter for use

26  as food, and immediately cease medicating animals in a manner

27  inconsistent with drugs' labeled indications and conditions for

28  use or the lawful written orders of a licensed veterinarian

10

1   within the context of a valid veterinarian-client-patient

2   relationship and FDA's regulations set forth in 21 C.F.R. Part

3   530.  Upon receipt of such notification, Defendants shall

4   immediately and fully comply with the terms of the notice.  Any

5   cessation of operations as described above shall continue until

6   receipt by Defendants of written notification from FDA that

7   Defendants appear to be in compliance with the terms of this

8   Decree, the Act, and all applicable regulations.

9       XV.  Defendants shall notify FDA at least thirty (30)

10  calendar days before any change in ownership, name, or character

11  of the business that occurs after the entry of this Decree, such

12  as reorganization, relocation, assignment, or sale of the

13  business that may affect compliance obligations arising out of

14  this Decree.  Defendants shall serve a copy of this Decree on any

15  prospective successor or assignee at least thirty (30) calendar

16  days prior to such sale or change of business, and shall furnish

17  to FDA and to the Plaintiff's attorneys an affidavit of

18  compliance with this paragraph within fifteen (15) calendar days

19  of such sale or change of business.

20      XVI. All notifications, correspondence, and communications

21  to FDA required by the terms of this Decree shall be submitted to

22  the Director, San Francisco District Office, 1431 Harbor Bay

23  Parkway, Alameda, California 94502-7070.

24      XVII. All decisions specified in this Decree shall be vested

25  in the discretion of FDA and shall be final.  FDA's decisions

26  under this Decree shall be reviewed, if necessary, under the

27  arbitrary and capricious standard set forth in 5 U.S.C.

28  § 706(2)(A) and shall be based exclusively upon the written

1    record that was before FDA at the time of the decision.  No

2    discovery may be had by either party.

3         XVIII. No sooner than five (5) years after entry of this

4    Decree, Defendants may petition this Court for an order

5    dissolving this Decree.  If Defendants have maintained to FDA's

6    satisfaction a state of continuous compliance with this Decree,

7    the Act, and all applicable regulations during the five (5) years

8    preceding Defendants' petition, Plaintiff will not oppose such

9    petition.

10        XIX. This Court retains jurisdiction of this action and the

11   parties hereto for the purpose of enforcing and modifying

12   this Decree and for the purpose of granting such additional

13   relief as may be necessary and appropriate.

14
          IT IS SO ORDERED.
15

16   Date:  _July 13, 2005___

17
                              /s/ OLIVER W. WANGER
18
                              _____
19                            UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

Entry Consented to:

FOR DEFENDANTS                          FOR PLAINTIFF

_____        McGREGOR W. SCOTT
                                        United States Attorney

/s/ Carl M. Sousa
(signature on file)            By:      /s/ Kirk E. Sherriff
CARL M. SOUSA                           KIRK E. SHERRIFF
on behalf of defendant                  Assistant U.S. Attorney
WHITE RIVER DAIRY

_____        Of Counsel:
                                        ALEX M. AZAR II
                                        General Counsel

/s/ Carl M. Sousa
(signature on file)
CARL M. SOUSA,                          SHELDON BRADSHAW
in his individual capacity              Chief Counsel
                                        Food and Drug Division

                                        ERIC M. BLUMBERG
Approved as to form:                    Deputy Chief Counsel for
                                        Litigation
KAHN, SOARES & CONWAY, LLP              MICHELE LEE SVONKIN
                                        Trial Attorney
                                        U.S. Dept. of Health &
/s/ John V. Ohnstad, Jr.                Human Services
(signature on file)                     Office of the General
JOHN V. OHNSTAD, JR.                    Counsel
                                        5600 Fishers Lane
Attorneys for defendants                Rockville, MD 20857
CARL M. SOUSA and                       (301) 827-2803
WHITE RIVER DAIRY

13